**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **APPEAL** |
| | § | |
| GOLDEN OIL COMPANY | § | CIVIL CASE NO. <u>4:06cv2239</u> |
| | § | |
| | § | |
| Chapter 7 | § | |
| | § | |
| GOLDEN OIL COMPANY, | § | |
| | § | |
| APPELLANT | § | |
| | § | |
| | § | |
| ENERGEN RESOURCES, INC. | § | |
| | § | |
| APPELLEE | § | |

---

**BRIEF OF APPELLANT**

---

Hugh M. Ray, III
SBN 24004246
Melissa A. Haselden
SBN 00794778
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
11 Greenway Plaza, Suite 1400
Houston TX 77046
(Telephone)  713-961-9045
(Facsimile)   713-961-5349

ATTORNEY FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

0419486

# <u>CERTIFICATE OF INTERESTED PERSONS</u>

I certify that the following is a list of all persons who or which are financially interested in the outcome of this appeal, and the names and addresses of the opposing law firms and/or counsel to the parties of this appeal.

Golden Oil Company, Inc.
Golden Oil Holding Corportation
AeroPanel Corporation
Instrument Specialties Company, Inc.
Ralph T. McElvenny, Jr.
(to be contacted only through the undersigned)

Titan Wells, Inc.

Energen Natural Resources, Inc.
To be contacted through:
**ATTORNEY FOR ENERGEN - APPELLEE,**
Philip T. Eisenberg
Locke, Liddell & Sapp, L.L.P.
600 Travis, Suite 3400
Houston, Texas 77002


SIGNED:        December 1, 2006


Hugh M. Ray, III

# <u>TABLE OF CONTENTS</u>

Page

**CERTIFICATE OF INTERESTED PERSONS** ...................................................................................1

**TABLE OF CONTENTS** .......................................................................................................2

**TABLE OF AUTHORITIES** ................................................................................................3

    STATEMENT OF BASIS OF APPELLATE JURISDICTION .....................................................5

    STANDARD OF REVIEW .........................................................................................5

    STATEMENT OF ISSUES PRESENTED FOR REVIEW ..........................................................6

**STATEMENT OF THE CASE AND PROCEEDINGS BELOW** ................................................7

    NATURE OF CASE ................................................................................................7

    STATEMENT OF THE FACTS RELEVANT TO THE ISSUES PRESENTED FOR REVIEW ..............9

    ENERGEN'S COUNSEL'S STATEMENTS AT THE OCTOBER 2004 HEARING ....................12

    NEGOTIATIONS AFTER THE OCTOBER 2004 CONFIRMATION HEARING ........................14

    EXPERT WITNESS REPORT AND TESTIMONY ............................................................16

    TRIAL IN THE COURT BELOW ..............................................................................18

    THE FINDINGS AND JUDGMENT OF THE COURT BELOW ............................................20

**LEGAL STANDARD** .......................................................................................................24

    ISSUE 1 -- PAROL EVIDENCE .................................................................................24

    LEGAL STANDARD FOR ISSUE 2 – THE EXPERT'S CONCLUSIONS ................................26

    LEGAL STANDARD FOR ISSUE 3 – JURISDICTION OVER TITAN WELLS .........................26

**SUMMARY OF ARGUMENT** ..........................................................................................27

**ARGUMENT** ................................................................................................................28

    ISSUE 1 - PAROL EVIDENCE RULE WAS MISAPPLIED .................................................28

        *The Court Erred (In Fact And Law) In Finding An Ambiguity* .........................28

        *The Court Erred in Admitting Energen's Parol Evidence* ..............................30

    ISSUE 2 – THE COURT BELOW IMPROPERLY DISREGARDED THE ONLY EXPERT ...............33

    ISSUE 3 – THE COURT EXCEEDED ITS JURISDICTION WITH REGARD TO TITAN WELLS ......34

**CONCLUSION** ..............................................................................................................36

**CERTIFICATE OF SERVICE** ..........................................................................................37

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157, (Tex. 2003) ....................................25, 32

*Bank of Marin v. England*, 385 U.S. 99, 102 (1966) ........................................................................27

*Central Virginia Community College v. Katz* , 2006 U.S. LEXIS 917, at *36-37 (Jan. 23, 2006)............26

*Cleveland v. United States*, 457 F.3d 397, 407 (5th Cir. 2006) ...........................................................5, 26

*Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ..........................................................................25

*Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 342 (5th Cir. 2004).....................................5

*Fuentes v. Shevin*, 407 U.S. 67 (1972)...............................................................................................26

*In re Chanticleer Associates, Ltd.*, 592 F.2d 70, 74 (2nd Cir. 1979) ................................................30

*In re Dahlgren Int'l, Inc.*, 147 B.R. 393, 399 (N.D. Tex. 1992) .......................................................25, 32

*In re Inter-America Minerals, Inc., Debtor, Joe Colvin, Trustee*, 107 BR 543 (N.D. Tex. 1989)................5

*In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1395-96 (5th Cir. 1987)................................5

*In re Smith Corset  Shops*, 696 F.2d 971, 976 (1st Cir. 1982) ...........................................................27

*In re Stratford of Tex., Inc.*, 635 F.2d 365, 368 (5th Cir. 1981)......................................................5, 24, 25

*Interstate Commerce Commission v. Louisville & Nashville Railroad Company*, 227 U.S. 88, 91 (1913)..........27, 34

*Litton v. Hanley*, 823 S.W.2d 428, 430 (Tex. App.--Houston [1st Dist.] 1992, n.w.h.) ..............................25

*Local 787, Int'l Union of Elec., Radio & Mach. Workers v. Collins Radio Co.*, 317 F.2d 214, 220 at. n7  (5th Cir.
       1963)..................................................................................................................................25, 32

*Mapco, Inc. v. Pioneer Corp.*, 615 F.2d 297, 302 (5th Cir. 1980)......................................................25, 32

*McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)*, 52 F.3d 1330, 1335-1336 (5th Cir. 1995)..................25, 28

*Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950) .....................................................27

*Pittman v. Gilmore*, 556 F.2d 1259, 1261 (5th Cir. 1977)................................................................26

*Republic National Bank v. Crippen*, 224 F.2d 565, 566 (5th Cir. 1955) ..........................................27, 34

*Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969)...................................................................26

*Tennessee Student Assistance v. Hood*, 541 U.S. 440, 446 (2004) ....................................................26

*Travelers Indem. Co. v. Holman*, 330 F.2d 142, 149 (1964) .............................................................25

*United States v. Dixon*, 413 F.3d 520, 523 (5th Cir. 2005)................................................................5, 26

*Wilson v. Belin*, 20 F.3d 644, 647-48 (5th Cir.1994).........................................................................5

*Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ................................................................................26

## Statutes

11 U.S.C. §1127(a)..............................................................................................................................30

28 U.S.C. § 158...................................................................................................................................5

28 U.S.C. §1334..................................................................................................................................26

## Rules

25 C.F.R. § 211.53...............................................................................................................................11

Fed. R. Bankr. P. 9017........................................................................................................................33

Fed. R. Bankr. P. 9019........................................................................................................................10

Fed. R. Civ. P. 44.1.............................................................................................................................33

Fed. R. Ev. 706(a)..........................................................................................................................16, 33

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **APPEAL** |
| | § | |
| GOLDEN OIL COMPANY | § | CIVIL CASE NO. 4:06cv2239 |
| | § | |
| | § | |
| Chapter 7 | § | |
| | § | |
| GOLDEN OIL COMPANY, GOLDEN OIL | § | |
| HOLDING CORPORATION, AEROPANEL, | § | |
| INC., AND RALPH T. MCELVENNY, JR. | § | |
|     APPELLANT | § | |
| | § | |
| | § | |
| ENERGEN RESOURCES, INC. | § | |
| | § | |
|     APPELLEES | § | |

_____

FINAL ORDER APPEALED FROM
THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION
_____

# BRIEF OF APPELLANT

TO THE HONORABLE MELINDA HARMON, UNITED STATES DISTRICT JUDGE:

    **COMES NOW,** Appellant, Golden Oil Company ("Golden Oil" or "Debtor"), who

respectfully represents the following:

# STATEMENT OF BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction based on 28 U.S.C. § 158, as an appeal from a final order of the United States Bankruptcy Court for the Southern District of Texas.[1]  *In re Louisiana World Exposition, Inc.,* 832 F.2d 1391, 1395-96 (5th Cir. 1987); *In re Inter-America Minerals, Inc., Debtor, Joe Colvin, Trustee,* 107 BR 543 (N.D. Tex. 1989).

# STANDARD OF REVIEW

There are three issues on appeal.[2]

The appeal relating to whether an ambiguity arises in the written Plan such that parol evidence should have been admitted is a question of law reviewed *de novo*.  *In re Stratford of Tex., Inc.*, 635 F.2d 365, 368 (5th Cir. 1981).  Likewise, the question of whether the court gave the proper application of the parol evidence rule is a question of law.

The second issue is a challenge to the court's disregard of the only expert testimony allowed in the case and is subject to an abuse of discretion analysis.  *Cleveland v. United States*, 457 F.3d 397, 407 (5th Cir. 2006); *United States v. Dixon*, 413 F.3d 520, 523 (5th Cir. 2005).

This court reviews *de novo* the Bankruptcy Court's exercise of jurisdiction over Titan Wells, not a party to the Plan or settlement with Energen, as an issue of jurisdiction.  *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 342 (5th Cir. 2004); *Wilson v. Belin*, 20 F.3d 644, 647-48 (5th Cir.1994).

---

[1] Herein referred to as "Bankruptcy Court" or "lower court" or "Court".

[2] Appellant designated more issues, but for the sake of clarity and to focus on the most pertinent issue, Appellant only raises three issues on brief.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Debtor Golden Oil and Energen compromised Energen's bankruptcy claim as stated in the Debtor's Plan of Reorganization.  Golden granted Energen a lien to secure Golden Oil's future obligations to plug and abandon oil wells.  The Plan of Reorganization granted Energen "lien on all of Debtors' Contract 47 production oil and gas proceeds therefrom".[3]  Orally, at the confirmation hearing, Energen referred to its lien as a "mortgage" and made statements which are the basis of this appeal.  When documenting the lien, a dispute later arose over whether Golden granted a lien on personalty or realty.  The Court found that the language of the Plan and Confirmation Order was ambiguous and admitted evidence of subsequent negotiations to document the lien, but excluded testimony of the only witness offered as to the meaning of the Plan.  The Court then determined that Energen should be granted a limited lien on the oil well equipment and surface and subsurface real estate, not merely personalty. The Court also ordered Titan Wells, Inc. (a nonparty to the plan and settlement) to subordinate its prior real estate lien to Energen's lien.

Therefore, in this case, the following issues are presented[4]:

**Issue One** - Whether the Bankruptcy Court improperly admitted parol evidence to contradict unambiguous language from a written Plan of Reorganization that the Debtor would grant a lien on oil and gas "production" and "proceeds therefrom", with no reference to a real estate lien in the document.

---

[3] Record 1 at Exhibits A and C–Debtor's Third Amended Plan of Reorganization and the Third Amended Plan Modification, paragraph 6.13.5.
[4] More issues were designated on appeal, but only these issues are presented on brief for the reasons stated in footnote 2.

**Issue Two** -   Whether the Bankruptcy Court abused its discretion in ruling contrary to the conclusions of its own court-appointed expert in the absence of any countervailing expert testimony.

**Issue Three** – Whether the Bankruptcy Court had statutory authority or jurisdiction to order Titan Wells, Inc. (neither a party to the settlement nor a plan proponent) to sign a subordination agreement.

## STATEMENT OF THE CASE AND PROCEEDINGS BELOW

### Nature of Case

Golden Oil is an operator[5] and owner of "working interests" in oil and gas wells located in New Mexico and Oklahoma.  The New Mexico wells are located in the San Juan Basin, on an executive order Indian reservation occupied by the Jicarilla Apache Indian Nation.[6]  Golden Oil operates and owns wells interests under a farmout agreement[7].  Energen retains a small royalty interest and working interest in some of the wells on its Number 47 lease.  Golden Oil filed bankruptcy in May 2003 when oil prices were at 30 year lows.  Golden Oil's disputes with the Apache Nation were the major precipitating factor for the bankruptcy.

Energen filed a proof of claim in Golden's bankruptcy alleging it was owed money for, *inter alia*, future plugging and abandonment expenses of oil wells.  When an oil well is depleted, various environmental regulations[8] require that cement be poured into the hole to "plug" the

---

[5] Through a subsidiary.
[6] The Jicarilla Indian Apache Nation is referred to herein as the "Apache Nation".  The Apache Nation has not signed a treaty with the United States.  Accordingly, their oil royalties are governed by the Department of Interior and collected by the Minerals Management Service.  The arrangement is, to be brief, quite complex.
[7] Energen represents that it is the successor-in-interest to the original lessor.
[8] For instance, in this case, Department of Interior Bureau of Land Management regulations.  *See* generally 25 C.F.R 211.1.

well.  An area around the well is also cleaned up and the well is "abandoned".  This "P&A" cost varies depending on the well.

Golden and Energen resolved the issue of how to pay for the future plugging and abandonment expense with two main agreements: 1) Golden would put certain money into an escrow account to pay for plugging and abandonment expenses, and 2) Golden would grant Energen a first lien on "oil and gas proceeds and production therefrom" in an amount up to $15,000 per well, cross-collateralized in all wells on the Contract 47 lease so that production from one well would pay for plugging the depleted well.

In the Plan of Reorganization, the Debtor granted Energen a lien on "proceeds" and "production" from the Debtor's Contract 47 oil wells to ensure plugging and abandonment.  This agreement was recited in the Third Amended Plan Modification, filed May 26, 2004.[9]

Golden Oil's bankruptcy proceeding allowed it to address a multi-million major dispute with the Apache Nation regarding back royalties.  Before it could confirm the Plan and pay creditors, the Bankruptcy Code required that Golden deal with the massive royalty claim of the Apache Nation.

Golden Oil proposed its Plan of Reorganization and held a confirmation hearing on May 28 of 2004.  The plan was conditionally confirmed, conditioned only upon a resolution of the dispute with the Apache Nation.[10]

Golden Oil resolved its dispute with the Minerals Management Service (the collecting entity for the Apache Nation, "MMS") in October 2004, when the MMS withdrew the proof of claim and paid Golden Oil's legal fees under the Equal Access to Justice Act.[11]

---

[9] Docket Number 292, also Record 1 at Exhibit C.
[10] See Record  at 40 (Docket entry #306).
[11] Record at 1 (Docket entry #399).

8

On October 6, 2004, the Plan of Reorganization was finally confirmed.[12]   At the Confirmation hearing, Energen's counsel made certain statements that are the subject of this appeal.

Pursuant to the confirmed Plan of Reorganization, Energen and Golden were expected to document their settlement with additional documentation.[13]  Golden and Energen were unable to do so after several months of negotiation.

Thus, on June 7, 2005, Energen filed a motion with the Bankruptcy Court to require Golden to execute, *inter alia*, a mortgage on real estate.[14]  After briefing, employment of a court-appointed expert, and a trial (all discussed below), the Bankruptcy Court determined that Energen should be granted a specifically limited mortgage on real estate, subject to judicial foreclosure only, and limited only to secure plugging and abandonment liability up to $15,000 per well.[15]  The Court also required that Titan Wells, Inc., which was not a plan proponent or party to any agreement with Energen, execute a subordination agreement to subordinate its lien to the subsequent real estate lien of Energen.

## Statement Of The Facts Relevant To The Issues Presented For Review

The Debtor's Plan of Reorganization was proposed by Golden Oil, Ralph T. McElvenny, AeroPanel Corporation, and Instrument Specialties Company, Inc.   It was voted on by

---

[12] Order Confirming Plan of Reorganization(Record 1) Docket  entry #399.
[13] See Third Amended Plan Modification (Record  1) at  Exhibit B, ¶3.
[14] Energen's Motion to Enforce, Golden's designation of Record 2.
[15] See Memorandum Opinion and Order of Bankruptcy Court Record 29, at p.8.

creditors.[16]  Titan Wells was neither a plan proponent nor creditor.[17]  Titan Wells did not appear in the bankruptcy proceeding.

The parties first agreed to the "Second Amended Plan Modification" (Docket # 290, Exhibit B to the Confirmation Order), which did state that Energen was to have a lien on the wells:

> Mr. McElvenny and the other plan proponents agree to grant a first lien, superior to their liens, for $14,000 per well in the 47 lease to satisfy plugging and abandonment costs, cross-collateralized in all wells in the 47 lease, such lien to be exercised only if Golden does not Plug and abandon wells timely.

Exhibit B to Confirmation Order, at p. 2.

The next day, the compromise with Energen was modified from a lien on the "wells", to a lien on "a first priority lien on all of Debtors' Contract 47 production oil and gas proceeds therefrom." This agreement was written into the Debtor's Plan of Reorganization by the "Third Amended Plan Modification" filed May 27, 2004 and stated, its entirety:

> 6.13 Energen has asserted a variety of claims; including administrative and secured, a right to cure payments, and filed a proof of claim in excess of $1.7 Million.  Pursuant to Fed. R. Bankr. P. 9019, this Plan shall constitute a motion to compromise with Energen, to the extent a motion is needed. The Energen claim will be satisfied by the following, subject to further documentation and bankruptcy court approval:
>
> 6.13.1 On the Effective Date, the Reorganized Debtor will pay Energen $100,000. Thirty days later, it will pay Energen $50,000.  Thirty days later, it will pay $30,000.
>
> 6.13.2 When the compromise with Energen is approved by the Court, the Debtor will place an additional $25,000 along with the current balance   into a separate account, the terms of which are to be satisfactory to Energen for the satisfaction of costs for the plugging and abandonment of the Debtor's operated Contract 47 wells , under the control of a disbursing agent or third party acceptable to the parties.
>
> 6.13.3 Every month, the Debtor shall pay an additional $1,588.00 into this plugging and abandonment escrow.

---

[16] Order Confirming Third Amended and Restated Joint Plan of Reorganization, Record at 1, p. 3.
[17] Id.

6.13.4 The Escrow will not be used to plug wells in the next six years following the effective date. The Debtor must plug wells within the next six years using cash flow

6.13.5 Mr. McElvenny and the other plan proponents **agree to grant a first priority lien on all of Debtors' Contract 47 production oil and gas proceeds therefrom**, including those rights obtained under the MLG Settlement, superior to their liens; including in the event of a default or foreclosure, for the ongoing payments into the escrow account referred to in 6.13.3 and for plugging and abandonment obligations arising or accrued on the Debtors operated portion of Contract 47 and the associated wells (up to $15,000 per well), cross-collateralized in all wells in the 47 lease.

6.13.6 The three applicable joint operating agreements to the Contract 47 wells operated by Debtor in which Energen has an interest are assumed and deemed cured and the joint operated agreements shall be also entitled to first priority lien status and all other interests, rights, liens or mortgages of any kind shall be are made subject to such joint-operating agreements, even in the event of default or foreclosure.  Energen's rights under applicable joint operating agreements will not be abridged by the Plan.

6.13.7 The parties will execute additional documentation of the transactions discussed in this paragraph separately from the Plan, including mutual releases and documents necessary to perfect the security interests described in this paragraph.

6.13.8 This settlement is conditioned on Reorganized Debtor having clear title on the Contract 47 properties currently operated and owned by Debtor, including a finding that royalties have been deemed properly paid on production from these wells and that all other lease obligations have been satisfied including all bonding obligations under 25 C.F.R. § 211.53.

Exhibit C to Confirmation Order, emphasis added.

The Confirmation Order found that the modifications were approved and made part of the

Plan, and that the May 27th modification deals only with paragraph 6.13:

On May 26, 2004, the Plan Proponents filed a proposed Modification and Motion to approve Modification (Docket #290 "Modification" and 291 respectively). On May 27, 2004, the Plan Proponents filed a proposed amended modification to the Plan dealing only with paragraph 6.13 at Doc. #292 ( the "Amended Modification", collectively with Doc. #290, the "Modifications").  In addition, on May 26 and 27, 2004, the Modification and Amended Modification, respectively were served on all creditors and parties-in-interest.  The Modifications only affect McElvenny, Energen and EOG.  Since all of these parties have accepted the Modifications, there is no need to provide additional disclosure or re-solicit votes.

Confirmation Order at p.2, paragraph 6.

Exhibit C to the Confirmation Order specifically modified Exhibit B and stated the lien was on "production and proceeds", not the well property.  Thus, Docket # 292 amended docket #290.  The Plan of Reorganization was not modified between the conditional confirmation at the first confirmation hearing of May 28, 2004 and the second confirmation hearing of October 6, 2004.

## Energen's Counsel's Statements at the October 2004 Hearing

At the October 6, 2004 confirmation hearing, counsel for Energen appeared and stated on the record that he wanted to "confirm" the agreement.  In describing the agreement, Energen used the term "mortgage".  That monologue included the use of the word "mortgage" in only one paragraph on page 7 of the transcript:

> [MR EISENBERG:]  The second point is that as part of the implementation of the lien and priority rights that were granted under the settlement, that Energen will be granted a first mortgage on the contract 47 properties. There was some discussion about that, but I think we've resolved. There may have been a misunderstanding about that, but they are granting us a first mortgage ahead of Mr. McElvenny's mortgages and any other mortgages.

Energen also stated that it would make a written amendment to the plan to memorialize any agreements about the lien made on the record that modified the lien.:

> [MR. EISENBERG]  And I think the confirmation order actually reflects that [lien] now, but I would like to -- if I do need to have that amended, <u>I would like to sit down with Mr. Ray and make sure that there is something in the confirmation order that provides that so that I could file that of record.</u>  It does provide it.  If it does provide it, then I have no issue.  And that's why I thought we were having a misunderstanding about that.

Confirmation Hearing Transcript p. 7 lines 11-18 (emphasis added).

It is now undisputed that Energen's counsel stated that his announcements at the October 6, 2004 confirmation hearing were not intended as an amendment of the plan:

THE COURT:  All right.  Let's start with the — I guess, for the Case No. 03-36974, Golden Oil.  Let's start with the discussions that you had about the amendments that you all might want to make to the order.

MR. RAY:  We're copacetic, Your Honor.

MR. EISENBERG:   With regard to Energen, Your Honor, <u>they're not amendments, so to speak.  But they would be things that I would like to put in record to reflect the understanding of the parties.</u>

Confirmation Hearing transcript p.5 lines 17-25 (emphasis added).

In addition, in its Brief in support of the Motion to Enforce, Energen's counsel stated:

5.     As this record reflects, the parties were attempting to clarify their agreements with respect to how the settlement contained in the Amended Plan Modification would be implemented.   They were not, as the Debtor has suggested, attempting to modify their agreement.   Indeed, Mr. Eisenberg expressly stated that the agreements placed into the record were "not amendments," but rather, constituted the parties' resolution of four issues that had been raised with respect to how their settlement would be implemented.

Docket Record No. 555.

Golden Oil did use the word "mortgage"– when explaining that the lien was for plugging and abandonment only, but not any other obligations to Energen:

MR. ROTHBERG [counsel for McElvenny]: Well, I agree, Your Honor. I think that's correct. The modification that deals with the Energen settlement, sets out the major terms, and this is getting the documents in place. And we did have a dispute over those documents, but I think dispute's been resolved now with the – and just to clarify the record, the mortgage that's being granted to Energen for the first lien is limited to the security obligations for plugging and abandonment only. It's not a mortgage for – overall first lien mortgage for all amounts due Energen.

MR. EISENBERG [counsel for Energen]: That's correct.

Transcript of October 6, 2006 hearing at page 8 line 25 through page 9 line 10.

## Negotiations After the October 2004 Confirmation Hearing

Golden Oil, in its response to the Motion to Enforce, readily admitted that both parties had "dragged their heels".  The Timeline for documenting the settlement is as follows[18]:

March, 2004  The Debtor creates an escrow account to pay for plugging and abandonment of "Number 47 wells"

May 28, 2004  - Settlement Reached and documented and Plan confirmed, conditioned on resolution of the dispute with the Apache Nation

October 6, 2004 -- Plan confirmed

October 16, 2004  –  Notice of Effective Date and Substantial Consummation

November, 2004  –  Discussions with Energen on Documentation.

December, 2004 – Discussions and e-mails about documents.

January - April 2005 -- No substantive discussions or e-mails from Energen.

April 8, 2005 --  Energen e-mails documents again and is informed to send documentation to Oil and Gas Counsel

May 2005  -- "Series of communications" with Oil and Gas counsel.

June 7, 2005 --  Energen files its motion to enforce.

June 27, 2005 -- Golden files its response to Energen's Motion to Enforce Settlement Agreement

October 29, 2005 – Order entered appointing Expert Witness

January 6, 2006-- Expert Report filed with the Court

April 28, 2006--Trial Brief on Parol Evidence filed by Golden Oil

May 02, 2006--Energen Resources Response to Trial Brief on Parol Evidence filed by Golden Oil

May 03, 2006--Hearing commenced on Motion to Enforce Settlement Agreement

May 17, 2006—Hearing concluded on Motion to Enforce Settlement Agreement

---

[18] Events up to June 7, 2005 from the Response to the Motion to Enforce (Record 3), events after that date are from the Docket (Records 40).

The dispute in the post-confirmation negotiations was whether Energen had a lien on the leasehold itself and all surface and subsurface equipment (a real estate interest), or rather a lien on the oil and gas production from the wells (a personal property interest).[19]

Before the Court below, Energen contended that they should also be granted a lien on the Debtor's <u>leasehold</u> and equipment, not merely "proceeds" and "production" of oil and gas.[20] Energen contended that its Counsel's statements about a "mortgage" on page 7 of the transcript "interpreted" or "clarified" the Plan Modification such that the lien on oil and gas production and proceeds was made to include a "mortgage" on real estate.[21]

Golden Oil contended that such statements are not admissible under the parol evidence rule, and that the written documents specifically reference only a lien on oil and gas proceeds and production – not real estate.[22]   Golden Oil filed a brief on parol evidence and moved to exclude the evidence.[23]   Energen replied that the statements by their counsel were merely explanatory, and that the language allowing a lien on "oil and gas proceeds" and "production" was sufficiently vague to allow evidence that the parties intended a real estate mortgage encompassing the Number 47 Leasehold interest and its equipment.[24]

Titan Wells was not mentioned in the Plan of Reorganization or Plan Modification.[25] Energen placed Titan Wells, Inc. in a draft of the mortgage sent to counsel.[26]

---

[19] See Transcript of May 3, 2006 trial at p. 28-170.  (The May 3, 2006 hearing transcript is referred to as the "Trial Transcript, Vol. 1" and the transcript of the May 17 continuation of the hearing  is referred to as the "Trial Transcript, Vol. 2".)

[20] Trial Transcript, Vol.1 at 28 to 170.

[21] Trial Transcript, Vol. 1 at p. 7.  See Energen's submission of documents to the expert (Record 32).

[22] Golden's submission of documents to the expert witness.  See Trial Transcript, Vol.1 at pp. 15-18.

[23] Golden's brief on Parol Evidence , Record 22(Docket #553); Trial transcript, Vol. 1 at pp. 15-18.

[24] Energen's response to Parol Evidence brief, Record 24 (Docket #555).

[25] Plan and Plan Modification (Record 1).

[26] Record at 2 (Docket  #497, Exhibit D.,p.6).

## Expert Witness Report and Testimony

The Court noted to the parties that a court-appointed expert on New Mexico oil and gas law was needed and asked both Energen and Golden to submit names of proposed experts.[27] Energen proposed Mr. Brewer as an expert.[28]  He was not proposed by Golden Oil.  Indeed, Golden Oil argued against using Energen's proposed expert.[29]

The Court officially appointed an expert in its opinion of November 21, 2005 (docket #530), in which it stated:

> The provisions of paragraph 1 of the Court's order of October 29, 2005, constitute the written instructions to the Expert Witness as contemplated by FRE 706(a) and the scheduling for determination of this dispute. The Expert Witness and the parties must comply with that schedule.

Docket #530 at decretal paragraph 1.

Paragraph 1 of the October 29, 2005 order constitutes the written instructions to the expert under Fed. R. Ev. 706(a) delineating the expert's duties - to compare versions of documents and generate a report on what documents will accomplish the goal of the settlement under applicable law and local custom:

> Golden will provide a copy of settlement agreement documents, a copy of the transcript of the October 26, 2004 confirmation hearing, and a copy of Golden's proposed documentation of the settlement to the Expert Witness on or before November 18, 2005.  Golden may add such other documents as it thinks will help the Expert Witness understand the issues and prepare his report to the Court.  On or before December 2, 2005, Energen will provide to the Expert Witness a copy of its proposed documentation of the settlement and any other documents that Energen believes are relevant.  Each party must provide the other with a list of documents provided to the Expert and must also provide the other party with a copy of any documents that it is not already of record in this contested matter. The Expert Witness will review documents and may conduct one or more conference telephone calls that include both counsel for Energen and counsel for Golden Oil on the same call, if the Expert Witness believes that the telephone call will assist

---

[27] Record at 6.
[28] Record at 7.
[29] Record at 8.

him in understanding the dispute and in properly advising the Court. **The Expert Witness will provide a written report to the Court on or before January 6, 2005, concerning which set of documentation, if either, accomplishes the requirements of the settlement agreement best and most closely in accordance with the law and customary practice of the area in which the settlement agreement requires documentation.** The Expert Witness may, in addition, explain deficiencies that he perceives in either or both sets of proposed documentation and may make such other report as the Expert Witness believes may be helpful to the Court in resolving the dispute between the parties. The Expert Witness must acknowledge and affirm that he is acting as a neutral court appointed expert, and not as an advocate for either party. The parties may file responses to the expert witness report if they are filed on or before January 20, 2006. The Court expects to rule from the written report and written responses, without further hearing, but will set a hearing if necessary.

Thus, the Expert was engaged to describe 1) the proper documentation and 2) "customary practice of the [geographic] area"

The Expert issued his report (which was later amended in small part), and which concluded that Energen's Mortgage did not serve to accomplish the settlement. Specifically, the expert rejected the real estate mortgage stating:

> I believe Energen's lien is in the nature of a security interest which is normally created by a security agreement. No party has submitted such an instrument for my examination other than those provisions in Energen's proposed mortgage and Golden's alternative form of mortgage related to this issue. **I cannot recommend that an instrument touching both realty and personalty be used in this case**.

Expert report at p. 8 (emphasis added).

The Expert also concluded that he did not believe that the language granting the lien on production and proceeds was so ambiguous as to allow for the imposition of a mortgage on equipment and real estate. As to the ambiguity, the Expert found none:

> **I do not, by use of the term "interpret", mean that the subject plan language was ambiguous – no party has claimed that this is the case**; rather, said language has given rise to two very different conceptual viewpoints on the part of the parties who proposed and accepted this language, so a third party who was not present at the time can hopefully be excused for being initially confused as to the nature of the settlement.

17

Expert report at p.3 (emphasis added).

Thus, the expert concluded that a mortgage was not the appropriate document under

applicable local New Mexican law and custom:

> Energen's lien has only those attributes expressed in the Plan which Golden et al.
> proposed and which Energen voted in favor of. The subsequent characterizations
> of Energen's lien by counsel for Energen or Golden at the Confirmation Hearing
> (transcript page 7, line 9 and page 9, line 5) **in which the term "mortgage" was
> used to describe the instrument creating Energen's lien cannot, in my view,
> alter that which was provided for in the Plan and confirmed by this Court**.
> Likewise, the manner by which the existing lien in favor of McElvenny, ISC and
> AeroPanel was documented has no bearing on what Golden, et al. and Energen
> agreed to in Section 6.13 of the Plan.

Expert report at pp. 5-6 (emphasis added).

The Expert then submitted a form personal security agreement, which he later amended

to strip off the "boilerplate".

## Trial in the Court Below

At trial, the Bankruptcy Court first took up the Debtor's motion to exclude parol

evidence.[30]   The Court denied the motion and admitted evidence of communications subsequent

to the Plan of Reorganization offered by Energen.[31]   That evidence included e-mails sent

between counsel attempting to negotiate the documentation of the settlement after Plan

confirmation.[32]   The Court below relied substantially on those e-mails, including an e-mail from

counsel that said "a creditor with a lien on collateral has a lien on the proceeds"[33]

---

[30] Trial Transcript, Vol. 1. at 18 to 23 (court interpreted Golden Oil's brief as a motion to exclude evidence and overruled it).
[31] Record at  27.  Trial Transcript, Vol. 1 at 56 to 62 (Testimony of Terry Radney).
[32] Record at 45 to 60.
[33] Memorandum Opinion (record 29) at p.4.

The Court excluded Energen's proffered expert witness.[34]   The only expert to give testimony was the Court-appointed expert, Mr. Brewer.[35]   As stated above, Mr. Brewer was an expert on oil and gas law in New Mexico and was hired to determine what the customary and proper documentation would be to document the lien in question.[36]   That expert's testimony at trial and his report did not recommend a lien on the real estate itself.[37]   That expert recommended a security agreement reaching only the oil and gas production, and proceeds therefrom.[38]

The only witness to testify regarding the parties' subjective intent when drafting the Compromise was Ralph T. McElvenny Jr.[39]   Mr. McElvenny was the only individual to testify as to what the agreement was with Energen when the agreement was made, and he testified he did not agree to a lien on real estate:

> [By Mr. Ray}  Okay. Did the deal with -- the compromise with Energen include granting Energen a lien on the oil and gas in the ground?
>
> A No, not in the ground.
>
> Q How are you so sure?
>
> A Because I was there.
>
> Q Okay. Why not?.  [objection by Energen]  . . .
>
> [p. 11 l. 7  - Ruling by Court] But, as far as what he intended the document to say, I think I will preclude testimony to that extent[40]

The Court thus precluded Mr. McElvenny from giving his testimony as to what he intended the document to say.

Energen called no witness regarding the drafting of the Third Amended Plan Modification or its meaning when drafted.[41]

---

[34] Trial Transcript, Vol. 1. at 151 to 162.
[35] Trial Transcript, Vol. 1 at 99 to 143.
[36] Order regarding court-appointed expert (record 12).
[37] Report of Expert (Docket 532, record 13).
[38] Report of Expert at 2-12.  Record 13.
[39] Trial transcript Vol. 2 at 5 to 27.
[40] Trial Transcript Vol. 2 at p.9 to 11.
[41] Trial Transcript, Vol. 1&2 (Record 27 to 28).

## The Findings and Judgment of the Court Below

The Bankruptcy Court issued the Memorandum Opinion on the ultimate merits, but the ruling on parol evidence was made only on the record in court during the trial.

At the trial, the Bankruptcy Court first took up arguments for and against admission of parol evidence.  The Court below repeatedly cited the expert's[42] report as one of the reasons for finding an ambiguity:

> The expert noted in his report, I want to say it's in four paragraphs.  I'll give you the references to those paragraphs.
>
> (Pause)
>
> Well, let me back up. I thought I had those easily available, but I don't. But as I read the expert's report today in preparation for the hearing, it occurred to me the Trustee [sic] was saying that there were a number of things that were not -- in which the agreement was just not --could not be effected. One was an issue that related to lien, as opposed to security interest and the treatment --
>
> oh, I know what it was. The issue that under New Mexico law -- 1 think it's paragraph 3 that talked about New Mexico law treats security interest created by a security instrument -- a security agreement as personalty and he had a problem with the concept of mortgage. He also had some problems with lien -- well, let me back up. My concern about the meaning of paragraph 6.13.5, the last part of it talking about cross collateralized as to the wells, creates in my mind some ambiguity about whether the security interest is intended to go to the well or simply the proceeds are production and therefore gives me some concern about whether the security interest or lien to be granted is an interest in personalty or realty. It's not clear to me from reading the paragraph.
>
> The Trustee also -- the Court's expert also expressed some concerns with respect to what he saw as apparent inability of the plan as written to be implemented since it called for some security interest to be superior to those held by parties who were not parties to the compromise agreement, which I think goes to the point that the document, paragraph 6.13, leaves ambiguous some provisions, or at least it sufficiently ambiguous so that I can't figure it out and so that the expert couldn't figure it out.

Trial Transcript Vol. 1. pp. 21:10 to 22:14.

---

[42] The Court mistakenly referred to the expert as a "Trustee" during his ruling.

The Court also stated that it was confused by the two modifications – Docket Number 290 (the Second Amended Plan Modification), which gave Energen a lien on wells, and the amendment filed the next day, Docket Number 292, (the Third Amended Plan Modification) that stated that the lien was on production and proceeds:

> I went back and looked at the plan and for some reason, about which I am not clear, there are actually two paragraphs 6.13's attached to the plan. There is an original, if you will, 6.13, which was filed with the emergency plan modification, which I think was docket Number 290.

> And then there is essentially Docket 290, which is a redline version of an – I mean Docket 292, which I think is a redline version of 290. Probably I should look at the Docket Sheet and make sure I've got the docket numbers right.

> [Golden's counsel offers the docket]

> THE COURT: That's okay. I can just pull it out of the Docket Sheet with the docket numbers and find anything easier. The Third Amended Plan was filed the – Energen filed a limited objection to the Third Amended Plan that said, in essence "Energen has reached an agreement with Golden. The agreement is being documented. The agreement contains certain provisions. And assuming that these are carried into effect, Energen will not object to the Plan."

> The day after Energen filed that, which by the way of Docket Number 267 – that's not correct, Docket Number 265. That was filed May 25th, 2004. The day after that was filed on the 26th, the Debtor filed a Notice of Plan Modification, which is Docket Number 290,. Which I just put up on the screen.

> In Docket Number 290, the issue with respect to what kind of security interest or lien Energen got said, "Mr. McElvenny and the other plan proponents agree to grant a first lien superior to their liens or $14,000 per lien in the 47 lease to satisfy plugging an [sic] abandonment clause cross-collateralized in all wells in the 47 lease, which lien to be exercised only if Golden does not plug and abandon the wells timely."

> It simply says the "47 Lease." It doesn't talk about proceeds and production.

> The next day there was an amended notice, which is Docket Number 292 and it contains a different provision. It says, "Mr. McElvenny and the other plan proponents agree to grant a first priority lien on all of Debtor's Contract 47 production oil and gas proceeds therefrom, including those rights obtained under the MLG settlement superior to their liens, including in the event of a default or foreclosure for the ongoing payments under the escrow account referred to in 6.13.3 and for plugging and abandonment obligations arising or accrued on the

debtors operated portion of Contract 47 in the associated wells up to $15,000 per well cross collateralized in all wells."

It doesn't say in all proceeds and production. It says "in all wells in the 47 Lease." Now, those two documents, I'm not clear why Docket Number 290 was attached to the Confirmation Order, but it was.  Both of those documents were attached to the Confirmation Order.

In looking at 6.13.5 in the second iteration it, the language seems strange to me. It says, "Grant a first priority lien on all production oil and gas proceeds therefrom."  It -- the sentence doesn't flow as I would normally expect it to. And then it says, "cross collateralized in all wells." It doesn't say, "in all proceeds and production." It says, "in all wells."

Trial Transcript Vol. 1 pp.18 line 18 to 21 line 6.

The lower court also found that the parties may have modified (or clarified or supplemented) the Plan of Reorganization such that the parol evidence is admissible to interpret the modification of the Plan, but not the Plan.  The Court found:

There's a -- in addition to that, I agree with Mr. Chavez [Energen's Counsel] that it seems to me that the parol evidence rule applies when the document is complete on its face. The document that we're interpreting here, or the document that I would be interpreting as to what kind of lien and the extent to which a lien is granted, would be the lien document itself, which I don't have. I've got an agreement to create a document, paragraph 6.13.6 of the original version and 6.13.7 of the redlined version, and as I said both of those are attached to the Confirmation Order for some reason, call for the parties to produce additional documentation.

I can't apply the parol evidence rules of the additional documentation which doesn't exist yet. In addition to that, and more important than that, my recollection from the hearing is that it was much in the nature of what Mr. Eisenberg said and that is that the parties announced that they had agreed on the documentation and made a statement on the record.

To the extent that they did, I think that they were clarifying or supplementing or interpreting 6.13.5 and to the extent that they did that, I think that it is – if it modified the document, then I think it is a subsequent agreement and one that is enforceable on the record – as being an announcement on the record. If it didn't modify it, which 1 think is more likely, it is a clarification and an explanation that I would use to interpret the document.

Therefore, I will allow for parol evidence and I will try to interpret the document as best I can.

Trial Transcript pp. 22:15 – 23:18.

The Court then clarified that it was making an evidentiary ruling denying a motion to exclude parol evidence filed by Mr. McElvenny:

MR. RAY: Your Honor, I'm sorry to interrupt.
Just for the record so it's clear, you're interpreting the brief on parol evidence as a Motion to Render or Exclude Evidence and overruling the motion?

THE COURT: That's correct.

Trial transcript pp. 23:22 – 24:1

The lower court's written memorandum opinion held that Energen's counsel's statement regarding a mortgage "was not intended as a modification of their settlement agreement, but as a clarification of their intent in interpretation of the confirmation order."[43] The Bankruptcy Court also held that the parties "recit[ed] into the record their understanding, intent, and interpretation of the plan and the confirmation order."[44]

The Court then found that the "clarification" required a lien on real estate because counsel used the word "mortgage" at the confirmation hearing:

In that clarification and interpretation, it was clear that Energen was to be given a mortgage, not merely a lien in the form of a contingent assignment of production. Both counsel for McElvenny were present at that hearing, and one of them clearly said that a mortgage was to be used, a real property interest not a security interest in personalty. McElvenny was present at the hearing and did not seek to confer with counsel to change their statement on the record.

Memorandum Opinion (Record 29) at p. 6.

The Bankruptcy Court made no finding that Golden Oil actually intended to grant a lien on real estate.

---

[43] Memorandum Opinion (Record 29) at pp. 4-5.

The Bankruptcy Court made the following ruling as to its own expert's testimony on the issue, proffered by Golden Oil:

> McElvenny argues that the Court's Expert found Debtor's documents to be more consistent with the confirmation order and plan documents. The Court rejects that argument. The Court's Expert was engaged to try to resolve word-smithing issues, based on the representation from Debtor and McElvenny that negotiations and word-smithing could resolve the problem. The Court has now concluded that the plan language and confirmation order language on which the Court's Expert properly relied, were materially clarified and interpreted by counsels' statements on the record at the confirmation hearing. The Court's Expert's report, therefore, is of limited (but some) utility relevance as noted below.

Memorandum Opinion at p. 7.

The Bankruptcy Court then ordered the parties to execute a list of documents, with certain modifications, including a subordination agreement.[45]  The Court specifically required that "Titan Wells, Inc. should be made a party to this agreement as suggested by the Court's Expert in paragraph 5 of his report on page 11."[46]

The Parties then submitted documents pursuant to the Court's order.

## Legal Standard

## Issue 1 -- Parol Evidence

The Fifth Circuit applies the parol evidence rule to interpretations of plans of reorganization:

> We apply the rules of contract interpretation to the interpretation of a plan of reorganization. See *In re Stratford of Tex., Inc.*, 635 F.2d 365, 368 (5th Cir. 1981). The determination of whether a contract is clear or ambiguous is a question of law. *Id.* If we determine the contract to be ambiguous, the determination of the parties' intent  from parol evidence is a question of fact.

---

[44] Memorandum Opinion (Record 29) at 3 to 6.
[45] Memorandum Opinion at p. 8 Numbered paragraph 2.
[46] Id.

*McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)*, 52 F.3d 1330, 1335-1336 (5th Cir. 1995)

The question of whether words create ambiguity is a matter of law, not fact.  *Stratford*, supra, *McFarland*, supra.

In a Plan of Reorganization, the Court takes a "snapshot" of the facts known to the parties at the time and does not look at subsequent acts of the parties.  See *Mapco, Inc. v. Pioneer Corp.*, 615 F.2d 297, 302 (5th Cir. 1980) (citing *Travelers Indem. Co. v. Holman*, 330 F.2d 142, 149 (1964)).

Judge Barefoot Sanders has addressed the issue of a creditor who sought to introduce parol evidence to construe a plan.  In *In re Dahlgren Int'l, Inc.*, 147 B.R. 393, 399 (N.D. Tex. 1992), the plan of reorganization required a creditor to liquidate its claim by a specific date.  The creditor sought to introduce an affidavit of subsequent actions by the debtor to clarify the plan.  The court struck the affidavit and cited *Mapco*, supra.  The Court found "Striking the affidavit will not hinder 'the essential act of the Court putting itself in the position of the parties at the time the contract was made.'" *Dahlgren,* supra, quoting *Local 787, Int'l Union of Elec., Radio & Mach. Workers v. Collins Radio Co.*, 317 F.2d 214, 220 at. n7  (5th Cir. 1963).

Indeed, if the Court *can* find the document unambiguous, it must.  "If the written instrument is worded so that it can be given certain meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law." *Litton v. Hanley*, 823 S.W.2d 428, 430 (Tex. App.--Houston [1st Dist.] 1992, n.w.h.) (citations omitted); see *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

An ambiguity exists only if the language is susceptible to two or more reasonable interpretations. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157, (Tex. 2003).

## Legal Standard for Issue 2 –The Expert's Conclusions

The Fifth Circuit (and therefore this court, sitting as an appellate court) reviews a decision to disregard expert testimony for abuse of discretion:

> Insofar as the district court chose to exclude the testimony of the doctors, we review for an abuse of discretion. *United States v. Dixon*, 413 F.3d 520, 523 (5th Cir. 2005). We also review for an abuse of discretion the district court's decision to credit one expert over another. See *Pittman v. Gilmore*, 556 F.2d 1259, 1261 (5th Cir. 1977) (stating that "the trier of fact is the final arbiter as between experts whose opinions may differ" and finding no abuse of discretion in the district court's ultimate decision).

*Cleveland v. United States*, 457 F.3d 397, 407 (5th Cir. 2006).

## Legal Standard for Issue 3 – Jurisdiction Over Titan Wells

Bankruptcy Courts, as adjuncts of the District Court, have jurisdiction over 1) property of the estate and 2) the claims resolution process.  28 U.S.C. §1334.  The jurisdiction of the Bankruptcy Court is accordingly described as *in rem*.  See, e.g., *Central Virginia Community College v. Katz* , 2006 U.S. LEXIS 917, at *36-37 (Jan. 23, 2006); *Tennessee Student Assistance v. Hood*, 541 U.S. 440, 446 (2004).  Accordingly, the Bankruptcy Court had subject matter jurisdiction over Golden Oil's oil wells.

However, it is equally well recognized that procedural due process requires adequate notice and a hearing before an individual may be deprived of his or her property. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). See also *Fuentes v. Shevin*, 407 U.S. 67 (1972) (action challenging replevin statutes); *Sniadach v. Family Finance Corp*., 395 U.S. 337 (1969) (state prejudgment garnishment procedure held unconstitutional).  Due process considerations also apply in the exercise of bankruptcy jurisdiction. *In re Smith Corset  Shops*, 696 F.2d 971, 976

(1st Cir. 1982) (citing *Bank of Marin v. England*, 385 U.S. 99, 102 (1966)). See also *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950).

In bankruptcy proceedings, affected parties have a constitutional right to be heard on their claims, and "the denial of that right to them [is] the denial of due process which is never harmless error." *Republic National Bank v. Crippen*, 224 F.2d 565, 566 (5th Cir. 1955) (quoting *Interstate Commerce Commission v. Louisville & Nashville Railroad Company*, 227 U.S. 88, 91 (1913)).

## <u>SUMMARY OF ARGUMENT</u>

The Bankruptcy Court found an ambiguity in a document where, as to the issue construed, there is none.  The Bankruptcy Court's ruling shows that the Bankruptcy Court simply got it wrong:

> 1) The lower court believed that the expert found an ambiguity over the issue of a real estate lien.  (He did not, indeed he found *no* ambiguity and stated a mortgage was improper).

> 2) The Court was confused by the two Plan Modifications. (The third amended modification filed the next day was redlined to show it amended the second by deleting a lien on "wells" and substituting "oil production".  The Modification creates no ambiguity.) and

> 3) The parties may have "interpreted" the plan on the record such that oral clarification created an ambiguity. (The parol evidence rule applies to the written Plan to bar those statements).

Having reached the wrong conclusion, the Bankruptcy Court then improperly applied the parol evidence of acts subsequent to the document to "clarify" the document.  This parol evidence was the basis of the Bankruptcy Court's ruling that the parties had meant to provide a lien on Golden Oil's leasehold interests and equipment (realty) in addition to oil and gas production (personalty).

The Court brushed-off the only expert in the case.  The expert specifically found that the documents required to effectuate the lien called for in the Plan did not include a mortgage.  The Bankruptcy Court discounted Mr. Brewer's work as "word-smithing".  However, Mr. Brewer was unequivocal that there was no ambiguity and that the proper way to create Energan's first security interest in oil and gas production was not via a mortgage.  In the absence of any countervailing expert evidence, the Bankruptcy Court abused its discretion by ordering the parties to execute a mortgage.

Finally, it was entirely improper for the Court below to order that Titan Wells's liens be subordinated.  Titan Wells, Inc. is a separate legal entity found nowhere on the docket or the Plan of Reorganization.  Titan Wells did not participate in the case.[47]   The lower court's order is unconstitutional and violates due process.

## ARGUMENT

## Issue 1 - Parol Evidence Rule was Misapplied

## The Court Erred (In Fact And Law) In Finding An Ambiguity

As stated above in *McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)*, 52 F.3d 1330, 1335-1336 (5th Cir. 1995), the Court determines whether an ambiguity exists as a matter of law, subject to *de novo* review.

The Bankruptcy Court found an ambiguity as to the meaning of the Plan, but it was confused.

---

[47] It may have loaned money to Golden Oil during the bankruptcy, but did not participate in anything related to the Plan or Energen or appear on the docket.

The Bankruptcy Court repeatedly called the expert the "trustee" and indicated (incorrectly) that the expert had found an ambiguity because the expert was confused about how to create a lien on production above Titan Wells, Inc.  To wit:

> But as I read the expert's report today in preparation for the hearing, it occurred to me the Trustee [sic] was saying that there were a number of things that were not -- in which the agreement was just not --could not be effected.

> \* \* \*

> He also had some problems with lien -- well, let me back up.

> \* \* \*

> The Trustee also -- the Court's expert also expressed some concerns with respect to what he saw as apparent inability of the plan as written to be implemented since it called for some security interest to be superior to those held by parties who were not parties to the compromise agreement, which I think goes to the point that the document, paragraph 6.13, leaves ambiguous some provisions, or at least it sufficiently ambiguous so that I can't figure it out and so that the expert couldn't figure it out.

It is rare that one finds a judge who just "got it wrong" as to a <u>major</u> point.  The Expert (who is not a Trustee) pointed out is that there was no ambiguity or party claiming an ambiguity in the Plan as to the issue of the extent of the lien.  There were likely other issues – cross-collateralization and documentation issues that create some hint of ambiguity.  However, there is no ambiguity that one can point to as to what kind of lien was intended, not based on the documents.

The Amended Plan Modification contains only one piece of language granting Energen a lien.  That Amended Plan Modification states:

> 6.13.5  Mr. McElvenny and the other plan proponents **agree to grant a first priority lien on all of Debtors' Contract 47 production oil and gas proceeds therefrom**, including those rights obtained under the MLG Settlement, superior to their liens; including in the event of a default or foreclosure, for the ongoing payments into the escrow account referred to in 6.13.3 and for plugging and abandonment obligations arising or accrued on the Debtors operated portion of Contract 47 and the associated wells (up to $15,000 per well), cross-collateralized in all wells in the 47 lease.

Exhibit C to Confirmation Order (emphasis added)

Note that the lien language, as a matter of law, creates no ambiguity sufficient to allow one to create a lien on real estate – only "production oil and gas proceeds therefrom".[48]

The Court found that the parties did not modify the plan.[49]  Rather, the Court referred to "interpretation".  Such an oral modification that contradicted the text of Proposed Plan and Confirmation Order would have likely been invalid.  See, 11 U.S.C. §1127(a) (proponent files a written modification with court); *In re Chanticleer Associates, Ltd.*, 592 F.2d 70, 74 (2nd Cir. 1979) (Bankruptcy Court's oral modification of plan of arrangement based on oral statement by counsel was in violation of its jurisdiction).

## The Court Erred in Admitting Energen's Parol Evidence

Because only written modification were proper, during the confirmation hearing, counsel for Energen stated that *written* modifications would be filed with the court, if they were needed:

> And I think the confirmation order actually reflects that [lien] now, but I would like to -- if I do need to have that amended, <u>I would like to sit down with Mr. Ray and make sure that there is something in the confirmation order that provides that so that I could file that of record.</u>  It does provide it.  If it does provide it, then I have no issue.  And that's why I thought we were having a misunderstanding about that.

Confirmation Hearing Transcript p. 7 lines 11-18 (emphasis added).

Energen's Counsel further stated that his announcements at the October 6, 2004 confirmation hearing were not intended as an amendment of the plan:

> THE COURT:  All right.  Let's start with the — I guess, for the Case No. 03-36974, Golden Oil.  Let's start with the discussions that you had about the amendments that you all might want to make to the order.

---

[48] Technically, the drafter's ambiguity, if at all, is whether the parties intended to lien <u>Oil</u> production and <u>Gas Proceeds</u>.  However, the parties readily admit both production and proceeds from hydrocarbons was intended.  That is not the ambiguity the Court found.  The issue is whether this language (as a matter of law) can be read to include a lien on <u>real estate</u>, which the expert testified is the purpose of a mortgage.
[49] Memorandum Opinion (record 29) at p. 4 and 6.

MR. RAY:  We're copacetic, Your Honor.

MR. EISENBERG:  With regard to Energen, Your Honor, they're not amendments, so to speak.  But they would be things that I would like to put in record to reflect the understanding of the parties.

Confirmation Hearing transcript p.5 lines 17-25 (emphasis added).

The position of Energen, adopted by Bankruptcy Court, was that the agreement was "interpreted" at the confirmation hearing -- but that "interpretation" is strained.  The memorandum opinion contained no finding that the Amended Plan Modification was ambiguous and needed the parties to supply an "interpretation".  However, the "interpretation" looks like an improper modification, except that Energen repeatedly disclaimed that it was a modification.  This court should look at the statements on the record by Energen as what they were – an impermissible attempt to modify the Plan.

The only mention of ambiguity is the ruling on the record regarding parol evidence, which shows that the court was confused.

The Court first called the court-appointed expert a "trustee" and stated that the expert had found ambiguity.[50]   However, the expert found the opposite, "I do not, by use of the term 'interpret', mean that the subject plan language was ambiguous – no party has claimed that this is the case. . . "[51]

The Court stated it was confused because two plan modifications were attached to the plan.[52]  The more recent plan modification was a redline of the first and filed the next day.  The original plan modification called for a lien "lien on the wells".  The one filed the next day was filed in both redline and black-line redlined to delete "lien on the wells" and insert "lien on all of

---

[50] Trial Transcript Vol. 1. pp. 21:10 to 22:14
[51] Expert Report at p. 3.
[52] Trial Transcript Vol. 1 pp.18 line 18 to 21 line 6.

Debtors' Contract 47 production oil and gas proceeds therefrom."  Moreover, no party had ever claimed that the two plan modifications were confusing or created an ambiguity.

Finally, the Court stated its belief that it could allow parol evidence because Energen's Counsel had made "clarifying" remarks on the record.[53]  The parol evidence excludes those very remarks.  Parol evidence cannot be used to create an ambiguity.[54]

The Court then mis-applied the parol evidence rule.  The parol evidence rule does not look to post-document events to interpret the document.[55]  It looks at the parties' knowledge and intent when the document was drafted.[56]  The Court below did not take any evidence, except the testimony of Mr. McElvenny, as to what the parties intended when the Plan Modification(s) were drafted.

Mr. McElvenny's testified as to his actual intent and stated he did not intend the lien to attach to the wells in the ground.[57]  The Court then excluded the rest of his testimony as to why that was so.[58]

Energen, on the other hand, premised its entire case on the documents and testimony of its own lawyers and the deposition of Mr. McElvenny's counsel, Mr. Rothberg.[59]  Energen did not look to the parties' intent when the Plan Modification was drafted.

The great majority of Energen's evidence was submitted to construe the alleged ambiguous plan modification, though none of it deals with the actions or intent of the parties prior to the drafting of the Plan Modification.  A significant portion of Energen's evidence was

---

[53]Trial Transcript, Vol . 1 pp. 22:15 – 23:18.
[54] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).
[55] *Mapco*, supra; *Local 787,* supra; *Dahlgren,* supra.
[56] *Dahlgren*, supra.
[57] Trial Transcript Vol. 2. p. 9.
[58] Trial Transcript Vol. 2. p. 11.
[59] Record at 27 and 28.

comprised of correspondence and email between Energen's and Golden Oil's counsel after the Plan Modification was submitted on May 27, 2004.[60]

Indeed, almost no e-mails dealt with the acts of Mr. McElvenny prior to the Plan Modification of May 27, 2004.[61]

The inclusion of Energen's parol evidence was a mistake and it led to a harmful result. The Memorandum Opinion was based entirely on the facts adduced by Energen that occurred after the Third Amended Plan Modification was filed on May 27, 2004.[62]  As a result of the ruling, Energen's lien attaches to the oil in the ground and the well equipment (above the surface and sub-surface), as well as production from the wells.   Energen has more collateral than the parties agreed.

### Issue 2 – The Court Below Improperly Disregarded the Only Expert

Industry custom and/or foreign law are frequently areas of expert testimony.  See. Fed. R. Civ. P. 44.1, Fed. R. Ev. 706(a) and Fed. R. Bankr. P. 9017.  The Court hired Mr. Brewer under Fed. R. Ev. 706(a).  Mr. Brewer was suggested as an expert by Energen.  The scope of his assignment was to report on "which set of documentation, if either, accomplishes the requirements of the settlement agreement best and most closely in accordance with the law and customary practice of the area in which the settlement agreement requires documentation."[63]

Energen admitted no expert evidence as to how to document a lien under New Mexican or Apache Nation law.  Energen proffered its own expert, Mr. Pieringer, who is a lawyer with the same firm as Energen's Counsel for that purpose.  However, the Court excluded Mr. Pieringer as an expert on the basis of relevancy due to his obvious self-interest.

---

[60] Record at 45 to 61.
[61] Record 45 through 50..
[62] Memorandum Opinion at p. 3 (record 29) (relying only on post-May 27 e-mails).  See also Records 45 to 61.

Golden, though it did not agree with all of the Expert's conclusions, adopted the Court's expert's conclusion.

The expert specifically rejected a Mortgage as an appropriate vehicle to grant the lien, "I cannot recommend that an instrument touching both realty and personalty be used in this case."[64]

However, the Court, in its Memorandum Opinion, creates its own set of documents – offered by neither party.  While the Court was well-intentioned, its actions flew in the face of the only evidence it had as to New Mexico or Apache Nation lien documentation.

## Issue 3 – The Court Exceeded its Jurisdiction with Regard to Titan Wells

Titan Wells was entitled to constitutional notice before the Court mandated that it subordinate a lien on Golden Oil's Contract 47 wells.

Titan Wells, Inc. was not served with the Motion to Enforce.[65]  Titan Wells, Inc. is not a party to the Plan of Reorganization.[66]  Titan Wells, Inc. does not appear on the Docket.[67]  Titan Wells was not a party any agreement with Energen.  Titan Wells was not a Movant or Respondent to the "Motion to Enforce".

In bankruptcy proceedings, affected parties have a constitutional right to be heard on their claims, and "the denial of that right to them [is] the denial of due process which is never harmless error." *Republic National Bank v. Crippen*, 224 F.2d 565, 566 (5th Cir. 1955) (quoting *Interstate Commerce Commission v. Louisville & Nashville Railroad Company*, 227 U.S. 88, 91 (1913)).

---

[63] October 29, 2005 order, at paragraph 1.
[64] Expert Report at p. 8.
[65] Record at 2, page 7-9.
[66] Record at 1 and 40.
[67] Record at 40.

Yet, the Court below ordered that Titan Wells be made a party to a subordination agreement[68], and that the agreement be executed.[69]   That is, Titan Wells was required to execute an agreement subordinating its multi-million dollar lien to Energen's mortgage.   There is no evidence in the record to explain how Titan Wells, Inc. may be obligated to execute a subordination agreement and no evidence in the record of that procedural due process was given to Titan Wells, Inc.

---

[68] Memorandum Opinion at second numbered paragraph (record 29).
[69] Memorandum Opinion at p. 8 (record 29) "The Court will then hold a hearing on those documents and will require execution of the documents or execution of amended documents."

# <u>CONCLUSION</u>

What the Plan of Reorganization says and what Energen's Counsel said on the record are not in dispute, but the lower court's interpretation of those facts is disputed.  The Bankruptcy Court found an ambiguity where there is none as a matter of law.  The Court also erred in the application of the parol evidence rule.  The lower court then allowed Energen's monologue and their subsequent actions and negotiations to act as a *de facto* modification of the written plan. The lower court disregarded the conclusions of the only expert.  Finally, the Court below should not have mandated a non-party relinquish a property right without due process.  For all of these reasons, the opinion of the lower court should be reversed.

Dated: December 1, 2006

Respectfully submitted,
WEYCER, KAPLAN, PLUAKSI & ZUBER, P.C.

Hugh M. Ray, III
SBN 24004246
11 Greenway Plaza, Suite 1400
Houston TX 77046
(Telephone)  713-961-9045
(Facsimile)   713-961-5349

ATTORNEY FOR APPELLANT

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 1, 2006, I sent a copy of the Appellant's brief via first class U.S. mail to the counsel of record that are listed below.

Phil Eisenberg
Locke Liddell & Sapp
600 Travis, Suite 3400
Houston, Texas 77002

_____
Hugh M. Ray, III  *ECF*