**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **APPEAL** |
| | § | |
| GOLDEN OIL COMPANY | § | CIVIL CASE NO. <u>4:06cv2239</u> |
| | § | |
| | § | |
| Chapter 7 | § | |
| | § | |
| GOLDEN OIL COMPANY, | § | |
| | § | |
| APPELLANT | § | |
| | § | |
| | § | |
| ENERGEN RESOURCES, INC. | § | |
| | § | |
| APPELLEE | § | |

---

**REPLY BRIEF OF APPELLANT AND RESPONSE TO CROSS-APPEAL**
**AND RESPONSE TO MOTION TO DISMISS**

---

Hugh M. Ray, III
SBN 24004246
Melissa A. Haselden
SBN 00794778
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
11 Greenway Plaza, Suite 1400
Houston TX 77046
(Telephone)  713-961-9045
(Facsimile)  713-961-5349

ATTORNEY FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

{L:\GOL051\00001\0422227.DOC;1\MAH}

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS .................................................................................................................... I

TABLE OF AUTHORITIES ............................................................................................................. II

SUMMARY ....................................................................................................................................... 1

RESPONSES TO "RED HERRING" ISSUES RAISED IN RESPONSE ...................................... 3

    ISSUES NOT RAISED ON BRIEF HAVE BEEN WAIVED. ..................................................................... 3
    GOLDEN OIL IS THE ONLY APPELLANT. ........................................................................................ 3
    ENERGEN DID NOT OPPOSE (AND STILL DOES NOT OPPOSE) EXTENDING THE DEADLINE. ............ 4

GOLDEN CAN RAISE THE BANKRUPTCY COURT'S DUE PROCESS VIOLATION .............. 4

ENERGEN RELIES ON FACTS OUTSIDE THE RECORD ....................................................... 5

THE BANKRUPTCY COURT'S ERROR WAS NOT HARMLESS ............................................ 7

    THE BANKRUPTCY COURT FAILED TO PROPERLY APPLY THE PAROL EVIDENCE RULE. ............... 7
    PAROL EVIDENCE CONSTITUTES THE ENTIRETY OF ENERGEN'S CASE .......................................... 8
    THE CONFIRMATION HEARING WAS NOT A PLAN MODIFICATION ................................................ 9

COURT'S EXPERT WAS THE ONLY EVIDENCE OF BUSINESS CUSTOM AND LOCAL LAW ........... 10

LEGAL FEES: A PLAN IS INTERPRETED AS A CONTRACT, BUT IS NOT A CONTRACT .................. 11

ENERGEN'S OTHER BASES FOR AN AWARD OF LEGAL FEES ARE UNFOUNDED ........................... 14

THE COURT CORRECTLY NOTED THAT GOLDEN OIL DID NOT AGREE TO A MORTGAGE ......... 15

RESPONSE TO ENERGEN'S MOTION TO DISMISS ......................................................................... 18

CONCLUSION ................................................................................................................................ 20

CERTIFICATE OF SERVICE ..................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993) .................................... 13

*In re Beta Int'l, Inc.*, 210 B.R. 279 (E.D. Mich. 1996) .......................................................................................... 13

*In re Cajun Elec. Power Co-op., Inc.*, 69 F.3d 746, 749 (5th Cir. 1995) ...................................................................... 4

*Marine Midland Business Loans, Inc. v. Miami Trucolor Offset Service Co.*, 217 B.R. 341, 348 (S.D. Fla. 1998) ... 12

October 6, 2004 Transcript Vol. 1 ..................................................................................................................................... 9

*Official Creditors' Committee of Stratford of Texas, Inc. v. Stratford of Texas, Inc. (In re Stratford of Texas, Inc.)*,
     635 F.2d 365 (5th Cir. 1981) .............................................................................................................................. 12, 13

*Phillips Petroleum v. Adams*, 513 F.2d 355 (5 Cir. 1975, applying Texas law) ............................................................ 7

*Rohm & Haas Texas, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208-210 (5th Cir. 1994 .................................. 5

*Simonetti Dev., Ltd. v. Hillard Dev. Corp. (In re Hillard Dev. Corp.)*, 238 B.R. 857, 871-872 (Bankr. S.D. Fla.
     1999)............................................................................................................................................................................ 13

*Townsend v. State of New Mexico*, 871 P.2d 958 (NM 1994) ....................................................................................... 7

*United States v. Kellum*, 523 F.2d 1284 (5th Cir. 1975).............................................................................................. 12

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir.), cert. denied, 498 U.S. 959
     (1990) .......................................................................................................................................................................... 12

*Zer-Ilan v. Frankford (In re CPDC Inc.)*, 221 F.3d 693, 701 (5th Cir. 2000).............................................................. 18

## Statutes

11 U.S.C. §§ 1121-1129 .................................................................................................................................................. 12

11 U.S.C. §1127 ................................................................................................................................................................. 9

11 U.S.C. §1129 .............................................................................................................................................................. 12

11 U.S.C. §1141 .............................................................................................................................................................. 12

28 U.S.C.§1927 .............................................................................................................................................................. 14

## Rules

Fed. R. Bankr. P. 8001 .................................................................................................................................................... 19

*CPDC* 221 F.3d at 699 ............................................................................................................................................. 18, 19

Fed. R. App. P. 28 ............................................................................................................................................................. 6

Fed. R. Bankr. P. 1001 .................................................................................................................................................... 19

Fed. R. Bankr. P. 8010 ..................................................................................................................................................... 6

Fed. R. Bankr. P. 9001 .................................................................................................................................................... 12

Fed. R. Bankr. P. 9011 ..................................................................................................................................................... 6

Fed. R. Bankr. P. 8006 .................................................................................................................................................... 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **APPEAL** |
| | § | |
| GOLDEN OIL COMPANY | § | CIVIL CASE NO. 4:06cv2239 |
| | § | |
| | § | |
| Chapter 7 | § | |
| | § | |
| GOLDEN OIL COMPANY, GOLDEN OIL | § | |
| HOLDING CORPORATION, AEROPANEL, | § | |
| INC., AND RALPH T. MCELVENNY, JR. | § | |
| APPELLANT | § | |
| | § | |
| | § | |
| ENERGEN RESOURCES, INC. | § | |
| | § | |
| APPELLEES | § | |

FINAL ORDER APPEALED FROM
THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

# REPLY BRIEF OF APPELLANT

TO THE HONORABLE MELINDA HARMON, UNITED STATES DISTRICT JUDGE:

**COMES NOW,** Appellant, Golden Oil Company ("Golden Oil"or Debtor), who respectfully represents the following:

## Summary

Energen's brief employs a "shotgun" delivery, covering numerous issues not on appeal and drawing inferences from facts outside the record. Energen's goal is to distract this Court

from the issues actually on appeal and the facts actually in the record. Energen hopes that the Court will latch on to an irrelevant issue instead of the facts and law briefed.

For example, Energen failed to contradict the critical elements of Golden Oil's brief – that parol evidence was wrongly admitted; that Energen's entire case was parol evidence; and that the Court violated Titan Wells' fundamental due process. While Energen argues that the lower court can weigh the only expert's testimony, it does not address how the lower court could disregard the *only* evidence as to local law and business customs. Energen argues that Titan Wells did not appeal (true) but does not address the obvious issue of Golden Oil's standing. Millions of dollars of additional Golden Oil assets are encumbered by the lower Court's Order, so it has standing to raise constitutional defects present in the lower Court's order which subordinated the prior security interests of Titan for cash loaned to Golden Oil, instead giving a priority interest in these assets to Energen. Energen misses the point in its claim for legal fees. While a plan of reorganization is interpreted using contractual interpretation rules, a plan is a unique creature of the bankruptcy law – not a contract entitling one to legal fees under Texas Law.

As for Energen's motion to dismiss, it appears to be more of the overreaching that has typified Energen's strategy. Energen originally took the position that it would not file an objection to Appellant's Motion for Extension of time. Energen did not object to the extension. Now Energen seeks to dismiss the appeal on the basis of an allegedly untimely opening brief. The facts of Mr. McElvenny's surgery are not subject to reasonable dispute and they appropriately support the short extension sought.

## RESPONSES TO "RED HERRING" ISSUES RAISED IN RESPONSE

### Issues Not Raised On Brief Have Been Waived.

The issues that were not briefed by Golden Oil have been deemed waived.[1]  Counsel for Energen could have saved much paper if he had merely called Golden Oil's counsel and confirmed this fact, which is also a generally accepted principal of law.  The only issues are the three issues raised by Appellant's brief, and the cross-appeal of Appellee.  The other issues designated on appeal are meritorious, but were deemed to distract from the dispositive issues that Golden Oil actually briefed.  The Court should disregard those portions of Energen's brief dealing with issues not raised by Golden Oil.

### Golden Oil is the Only Appellant.

Golden Oil is the only entity that filed a notice of appeal and thus the only appellant. Simply put, Golden Oil's assets and business future is at stake.  Golden Oil is the entity most affected by the lower court's vastly expanded encumbrance of millions of dollars of oil and gas reserves and surface and subsurface equipment to cover Energen's relatively small, maximum $405,000 lien to secure future plugging and abandonment and obligations.

While other entities (including Titan Wells) are negatively impacted by the involuntary subordination of their liens, the injury from the Bankruptcy Court's ruling is on Golden Oil's assets and its ability to attract market capital, completion financing loans or purchasers.  The other potential appellants are in privity of contract with Golden Oil, such that injuries to Golden Oil constitute injuries to their collateral.

---

[1] It is possible that parts of the issues briefed have been subsumed or merged into the three issues briefed.  For instance, a necessary conclusion from one issue – that the lower court was clearly erroneous in disregarding the only expert evidence – is that the court below substituted its judgment for the expert.  However, since Energen correctly notes Golden Oil waived any issue not briefed, one questions why Energen then briefed these non-issues.

One has standing to appeal a bankruptcy order if one is "directly and adversely affected pecuniarily by" the order appealed from. *In re Cajun Elec. Power Co-op., Inc.*, 69 F.3d 746, 749 (5th Cir. 1995). Golden Oil is directly and adversely affected pecuniarily by an encumbrance of millions of dollars of its assets. In any case, Energen's brief smacks of gamesmanship by attempting to parse the parties, when Golden Oil unquestionably has standing as a "person aggrieved" by the order.

## Energen Did Not Oppose (and Still Does Not Oppose) Extending the Deadline.

The merits of the motion to dismiss are dealt with later in this reply. However, Energen's "red herring" is that it omits that it did not oppose Golden Oil's motion for extension, but now seeks dismissal of the appeal on the same basis. Several days before the briefing deadline, Golden Oil's counsel informed Energen's counsel of Mr. McElvenny's severe and immediate health issues and the need for an extension. Energen's counsel communicated with his client and was unable to obtain a decision, so he could neither object to nor agree to the extension. Energen never opposed Golden Oil's motion to extend the deadline. The time to oppose such relief has run. Energen has not filed a belated objection to the motion for extension of time, and has not set forth any basis to object to the 30 day extension sought, except to cast aspersions on the extent of Mr. McElvenny's condition

## <u>Golden Can Raise the Bankruptcy Court's Due Process Violation</u>

Energen cited no law for the proposition that Golden Oil lacks standing to raise a substantive defect in the Order on appeal. Energen argues that Titan Wells' interests were "represented" by Golden Oil, but Energen relies on facts outside the record for this claim.

Instead of addressing the case law cited by Golden Oil and attempting to defend the Bankruptcy Court's Order, Energen has continued a pattern of gamesmanship by claiming Golden Oil lacks standing to point out the due-process violation, rather than addressing the violation head-on.

To the contrary, Golden Oil has standing because its assets are directly at stake. Millions of dollars of Golden Oil's assets are being encumbered by the greatly expanded security interest provided by the Bankruptcy Court's Order. Golden Oil may raise any defect in the Order, because Golden Oil is a "person aggrieved" by the Order.[2]

The cases cited by Golden Oil in its brief – that Titan Wells was not a party and its exclusion was harmful error – lay unchallenged. Golden may raise any defect on appeal, and a harmful violation of jurisdictional and constitutional principles is well within the bounds of a permissible subject for appeal by anyone adversely affected by the order.

## ENERGEN RELIES ON FACTS OUTSIDE THE RECORD

Energen makes several dangerously misleading statements in its brief. These form the core of important arguments which Energen fails to support by <u>any citations to the record</u>. Indeed, among the information not to be found anywhere in the record is the following:

Whether Ralph T. McElvenny Jr. has any interest in Titan Wells, Inc. or the power to act unilaterally for Titan Wells, Inc. (He may work there, but that is also not in the record).[3]

What the estimated well-plugging costs are (The well-plugging costs will not be $600,000, and Golden Oil's liability is only to pay up to $15,000 per well on a well-by-well basis as wells become depleted. Above that figure, Energen must pay its full working interest share of plugging costs).[4]

---

[2] See, e.g., *Rohm & Haas Texas, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208-210 (5th Cir. 1994).
[3] Response at p. 25.
[4] Response at p. 3, n.4.

Whether Energen had been wrongfully refused payments on working-interests (it had not).[5] Mr. Eisenberg (counsel to Energen who wrote Appellee's brief) never "expressly stated that the agreements placed into the record constituted the parties resolution of four issues . . ."[6]

There is no citation to the record for the reference to Mr. McElvenny's alleged mortgages on the real property, or what the terms of those mortgages were.[7]

There is no video deposition of Edward Rothberg in the record.

In a normal appellate brief, certain background information may be provided without citation to the record. However, the inclusion of background information is not a license to create facts favorable to your position. Specifically, when background information is crucial to the decision, it must be supported by citations to the record and it must be truthful. See Fed. R. App. P. 28 (a)(7), (a)(9)(A) and (b); Fed. R. Bankr. P. 8010 (a)(1)(D)-(E) and (a)(2) Fed. R. Bankr. P. 9011; see also *Alameda Films S A De C V v. Authors Rights Restoration Corp.*, 331 F.3d 472, 483 (5th Cir. 2003) (declining to reach the merits of claims on appeal due to appellant's failure to cite to authority or to the "voluminous record" in support of its assertions).

Without citation to the record, Energen claims that Mr. McElvenny is the President of Titan Wells.[8] Energen has adduced no evidence to show that the Bankruptcy Court was ever made aware of Mr. McElvenny's position with Titan Wells, or how Golden Oil could unilaterally bind Titan Wells.

The attorney's fees claim also hinges largely on facts outside the record. For instance, no legal fees have been admitted into evidence. Without evidence of legal fees, it is impossible for the Bankruptcy Court to determine reasonableness and issue an award.

---

[5] Response at p. 3.
[6] Response at p. 6.
[7] Response at p. 12, n. 38.
[8] Response at p. 35.

Finally, Energen states that Golden Oil's counsel "was removed" and ceased representing Mr. McElvenny at some time.[9]   The statement is unsupported by citation to the record and was rebutted by the docket and the pleadings therein.

Appellate courts will not consider arguments based on facts outside the record.  See, e.g., *Alameda Films*, supra.  This is especially true when the party failed to present that evidence to the lower court.  It would be one thing for Energen to fail to designate facts as an administrative matter.  However, here Energen bases its arguments on alleged "facts" that Energen never presented to the Bankruptcy Court, that the Bankruptcy Court was unaware of, and that are sometimes false or misleading.

## THE BANKRUPTCY COURT'S ERROR WAS NOT HARMLESS

### The Bankruptcy Court Failed to Properly Apply the Parol Evidence Rule.

The Bankruptcy Court mis-applied the parol evidence rule.   The Plan Modification document required a lien on "proceeds", which is a personal property interest under New Mexican law:

> I cannot recommend that an instrument touching both realty and personalty be used in this case. New Mexico, like Texas, considers severed oil and gas (i.e. "production") to be personal property. See *Townsend v. State of New Mexico*, 871 P.2d 958 (NM 1994), headnote 2, a copy of which is attached. See also *Phillips Petroleum v. Adams*, 513 F.2d 355 (5 Cir. 1975, applying Texas law) headnote 6, a copy of which is attached. <u>Production proceeds are clearly personal property covered by the New Mexico Uniform Commercial Code.</u>

Expert report at p. 8. <u>(Emphasis added).</u>

---

[9] Response at p. 16.  "Sometime thereafter, counsel for Energen was notified that Debtor's counsel had been removed as counsel with regard to finalizing the agreements required by the parties' settlement and that new counsel had been retained by Golden."

Not only did the Bankruptcy Court's appointed expert from New Mexico inform the Court that a real-estate mortgage[10] would not be used to grant a lien on production proceeds (as provided in the Modified Plan), but he provided a form of a personal property security agreement, which the lower Court rejected.[11]

Energen's Response argues that the Plan Modification allowed for other documentation, and thus the Court did not err.[12]  Energen's logic fails because the Plan Modification was quite clear about the nature of the lien.  The Plan Modification had been amended from "lien on the wells" to read a "lien on production and proceeds".[13]

The Court below found that there was ambiguity as whether the word "production" could lead to a mortgage on real property, which was his error.  The evidence of subsequent negotiations between counsel did not change the written Plan Modification and the nature of New Mexican law.

## Parol Evidence Constitutes the Entirety of Energen's Case

The parol evidence was the lower Court's only justification for reading the Plan Modification's lien on "production" to include a real estate lien, and it was thus harmful error. Energen's only witnesses were its own lawyers employed *after* Plan Confirmation.  Those Energen attorneys were not present at and were unaware of the negotiations leading to the Plan Modification.  Further, they were not present at the Confirmation Hearing when Energen made its monologue, using the word "mortgage" only twice.[14]

---

[10] The Court's Expert did not reject chattel mortgages (a mortgage on personalty), but presumably rejected them by focusing on security agreements and the Uniform Commercial Code.  .
[11] Expert Report (Record 14) at p.10.
[12] Response at p. 27.
[13] See Appellant's opening brief at p. 10-11.
[14] Transcript of October 6 hearing at 1 (appearances page).

Counsel's post-confirmation negotiations do not reflect what the parties intended when they drafted the agreed Plan Modification in May 2004. Rather, they indicate the post-confirmation situation and Golden Oil's counsel's willingness to be reasonable and consider new suggestions by Energen. No such Energen proposal was approved by Golden Oil, and Energen cites no evidence of any such approval compromise. The Court based its rulings on that parol evidence, which was erroneously admitted and considered.

## The Confirmation Hearing was not a Plan Modification

Energen mis-applies the "announced settlement" rule and claims that the "settlement" (Energen's Counsel's monologue) bound Golden Oil.[15] Certainly, if the parties _had_ announced a settlement on the record in the absence of a writing, Energen's argument might persuade. However, the Parties' settlement was embodied in the Plan of Reorganization filed over six months before the hearing.

Energen has failed to cite any law to contradict Golden Oil's position that such a modification could not have happened as a matter of law because plan modifications in Chapter 11 Plans must be filed with and approved by the court. 11 U.S.C. §1127. Also, Energen fails to explain why, if there was a plan modification, Energen's Counsel repeatedly stated the contrary.[16]

---

[15] See Response at p. 28.

[16] See October 6, 2004 Transcript Vol. 1. at p.5 "they're not amendments, so to speak"; Transcript at Vol. 1. p. 7 "And I think the confirmation order actually reflects that [lien] now, but I would like to -- if I do need to have that amended, I would like to sit down with Mr. Ray and make sure that there is something in the confirmation order that provides that so that I could file that of record. It does provide it. If it does provide it, then I have no issue."

## Court's Expert was the Only Evidence of Business Custom and Local Law

Energen takes a peculiar position on the utility of the Expert. On page 39 of their brief, Energen claims the Bankruptcy Court could disregard its own expert, even though it provided the *only* evidence on how to effectuate a lien according to industry custom and local law. Energen specifically objected to the independent Expert's conclusions prior to trial and offered its own expert (again one of its own lawyers) who was excluded. On page 47 of the Response, Energen states that the court below was clearly erroneous because it ruled "[d]espite the court's expert, Mr. Brewer, testifying as to the reasonableness of Energen's form of escrow[.]" One may question whether Energen even believes its own position that the Bankruptcy Court was clearly erroneous in stripping some of Energen's more abusive terms from the proposed escrow agreement.

The Court's Expert was the only evidence admitted to explain how one creates a lien on production oil and gas proceeds on Jicarilla tribal lands in New Mexico[17], and which documents are used create a lien under the customs of the local oil industry. Then, on the issue of whether a breach of the lien documents should entitle *only Energen* to legal fees (contrary to the Court's Expert's conclusions), the Court used his own experience instead of the Expert's:

> THE COURT: I don't know. I'm not dealing with all of your relationships here. All I'm dealing with is the security interest for plugging and abandonment. So I'm not going to bring in all the other possibilities what the business deal might be. I know that every mortgage I've ever signed, you know, I heard your comment a minute ago about a reciprocal agreement, <u>every mortgage I've ever signed getting security for a note to buy a house has provided for attorney's fees</u> for the mortgagee. I've never had a right to attorney's fees under it.

---

[17] These wells were within the Jicarilla Apache Nation and subject to regulation from the Bureau of Land Management and Department of Interior, Minerals Management Service.

So, you know, my sense of what is the custom in the process is that, you know, the secured lender gets attorney's fees for foreclosing, the borrower doesn't. <u>I'm simply going with what I've seen is the custom in drafting these documents.</u>

Transcript of June 19, 2006 hearing at pp. 75, line 15 to 76 line 4. (emphasis added).

Golden Oil's dispute regarding the conclusions of the Expert is different from Energen's many disputes with that independent Expert, Golden Oil believes that the Court acted contrary to the only evidence in the record as to business custom and local law.  Energen just doesn't like the Expert's conclusions and overreaches, claiming for example that an escrow "satisfactory to Energen" implies Energen may dictate any terms.  The Court below rejected Energen's argument by stating that the "satisfactory" language necessarily included restrictions of reasonableness.

On the other hand, the Bankruptcy Court stated it was substituting personal experiences for those of his Expert on at least one occasion, and in the absence of any other evidence.  While the abuse of discretion standard is a high hurdle, it is met here.  Here the Court's disregard for the Expert and insertion of his own opinion on business custom was an abuse of discretion warranting reversal.


## Legal Fees: A Plan is Interpreted as a Contract, but is NOT a Contract

Energen seeks legal fees for breach of a plan, but misapplies the law.  Energen correctly states that a plan of reorganization is interpreted according to normal contractual interpretation principles, and that Texas has a fee-shifting mechanism for breaches of Texas contracts.  However, a plan of reorganization, though interpreted "like" a contract, is not a contract.  Unsurprisingly, Energen cites no law to support Energen's actual proposition that breach of a plan entitles one to legal fees under Texas Law.

To the contrary, a plan of reorganization is a creature of statute that lacks the essential elements of a contract – assent to material terms by willing parties. A plan of reorganization is a treatment of creditors' bankruptcy claims under a Federal statute that authorizes such treatment. The statute can discharge claims that remain unpaid or under-paid, even without the assent of the creditor. See, e.g., 11 U.S.C. §1141. The statute imposes obligations of "fairness" not found in contract law. 11 U.S.C. §1129. The statute will imply assent by unimpaired classes of creditors and by the minority of creditors out-voted in the plan. 11 U.S.C. §1129. Simply put, a plan of reorganization is NOT a contract.

There is ample case authority for the proposition that a plan of reorganization is not a state-law contract, and Energen's arguments to the contrary are sophism:

> Although a confirmed plan of reorganization is often compared to a contract (a traditional creature of state law), and although some courts describe it as such, this court nevertheless concludes that a chapter 11 plan confirmation order, and obligations arising thereunder, are necessarily federal in character. **A confirmed plan of reorganization is a creature of the Bankruptcy Code, a comprehensive federal remedial statute.** Although obviously a confirmed plan is often the fruit of negotiations tantamount to contractual bargaining, the contents of a plan (both mandatory and permissive), the requirement of judicial approval, and the manner in which the parties obtain that approval, are all governed by federal law, i.e. the Bankruptcy Code. See generally 11 U.S.C. §§ 1121-1129. Moreover, federal law provides for the implementation of the plan, 11 U.S.C. § 1142, and treats a confirmed plan as a federal judgment entitled to res judicata effect. See, e.g., *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir.), cert. denied, 498 U.S. 959 (1990) (confirmation order entitled to res judicata effect); *Marine Midland Business Loans, Inc. v. Miami Trucolor Offset Service Co.*, 217 B.R. 341, 348 (S.D. Fla. 1998) (confirmation order is "a final judgment on the merits"); Fed. R. Bankr. P. 9001(7) (defining "judgment" as "any appealable order"); cf. *United States v. Kellum*, 523 F.2d 1284 (5th Cir. 1975) (consent decree treated as a judgment, and not a contract, for statute of limitations purposes). **Although many courts construe the terms of a plan in accordance with State contract interpretation principles, reorganization plans, by virtue of the orders confirming them, are regarded as judgments of the federal courts.** See *Official Creditors' Committee of Stratford of Texas, Inc. v. Stratford of Texas, Inc. (In re Stratford of Texas, Inc.)*, 635 F.2d 365 (5th Cir. 1981) (Judge Anderson, writing for a unanimous panel, states that a confirmed arrangement is tantamount to consent judgment, but

construed as contract); see also *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993) (citing Stratford and holding that state contract interpretation principles constitute federal rule of decision for interpreting confirmed plan); *In re Beta Int'l, Inc.*, 210 B.R. 279 (E.D. Mich. 1996) (citing Stratford regarding contract interpretation). Accordingly, because this court characterizes Simonetti's **claim for determination of its rights under the First Plan as enforcement of a bankruptcy court judgment, and therefore essentially federal in origin**, it becomes necessary to borrow a limitations period to fill in the gaps in the applicable federal law.

*Simonetti Dev., Ltd. v. Hillard Dev. Corp. (In re Hillard Dev. Corp.)*, 238 B.R. 857, 871-872 (Bankr. S.D. Fla. 1999) (emphasis added, footnotes omitted).

The cases that describe a plan of reorganization as a "contract" are, of course, speaking metaphorically, or with some imprecision. A contract is generally formed under state law. A plan of reorganization is a "creature of the Bankruptcy Code". *Simonetti*. A contract is not entitled to be enforced as a consent judgment, but a Plan of Reorganization is enforceable as a judgment. *Stratford*, supra. The "rule of decision" for plan interpretation applies contract interpretation principles. *Hillis Motors*, supra. That is not to say a Chapter 11 plan is an actual contract. A Chapter 11 plan requires no additional consideration from the Debtor. A Chapter 11 plan requires no specific assent to terms.

Energen also missed the holding of the Bankruptcy Court, when Energen asked for its legal fees, the Court stated that there was no meeting of the minds as to the agreement and denied the request for legal fees after finding that neither party was at fault:

> MR. EISENBERG: Energen has filed a motion for attorney's fees, which -- and a motion to clarify, which is not yet set.
>
> THE COURT: I saw that. I'm sorry. I saw that. That's denied. As much trouble as I've had getting through this, you know, I just don't think that it is fair to say that Golden simply did not -- did not comply. You know, I'll go through the same litany that I went through this morning -- well, not this morning, but earlier this afternoon.
>
> I think -- Let me try to restate it this way.

What I have tried to do is to work through with both parties to get to documents that I think implement what the parties told me at the confirmation hearing that they had agreed to do.

**The status of the agreement at that time was so deficient that I cannot right here today say that either side was totally at fault in failing to reach agreement. I think it would be inequitable for me to assess attorney's fees under the state of the agreement as it was,** attorney's fees up to this point. Now, I've provided for attorney's fees, the collection of the note and that sort of thing going forward. And, you know, that's fine. But I'm not going to award attorney's fees on getting to where we are.

So tomorrow, with the revised documents, bring me (a) an order that says these are the revised documents. The parties are required to sign them. A separate order that says, the motion to extend the appellate period is granted. The appellate period does not begin to run until the order is signed defining the documents to be signed. And (3) attorneys fees are denied.

Transcript of June 19, 2006 hearing.

The Court did not err in refusing to award legal fees to Energen. The Court should have ruled that legal fees were not available as a matter of law for the reasons stated above. However, the Court ruled that such fees would be inequitable given the state of the agreement and that neither side was at fault, which reaches the same result.

Golden Oil's position in this case has been that Energen is constantly overreaching. Energen built its massive real-estate lien on the casual use of the word "mortgage" by counsel at a hearing. Energen has built its legal fee claim on the rather casual observation that courts interpret plans of reorganization using contract principles. The Court below perceived this overreaching and correctly ruled against Energen in the second instance.

## Energen's Other Bases for an Award of Legal Fees are Unfounded

Energen cites to statements in the Memorandum Opinion that Energen believes show the Court below abused its discretion in failing to award attorneys fees under 28 U.S.C. §1927.

Energen mischaracterizes the findings of the Bankruptcy Court – which was that *both* sides have been responsible for this litigation.[18]  Obviously, if Golden Oil had simply given in to Energen's demand for a lien on all of Golden's subsurface mineral rights, the issue would never have arisen.  Likewise, if Energen had been satisfied with a lien on "proceeds" and "production" as the Plan Modification stated, then Golden would not have been forced to litigate.  As the Court stated at the June 19th hearing, "The status of the agreement at that time was so deficient that I cannot right here today say that either side was totally at fault in failing to reach agreement."[19]

Energen's arguments for discretionary legal fees are specious.  Energen only raises it as part of its "shotgun" approach and naked attempt to distract this Court with irrelevancies, peccadilloes, and claims outside of the record.  There is nothing in the record before this court to show what the legal fees were, or on what basis they were requested.

## The Court Correctly Noted that Golden Oil did not Agree to a Mortgage

Energen's brief[20] claims the lower Court clearly erred in not allowing an escrow "satisfactory to Energen", which the Court below held was overreaching.[21]  Moreover, the Court's statement on the record that the parties never actually reached an agreement (quoted at length above) tells the hard truth.  The issue requires background that Energen omits from its own brief, namely, that Golden Oil was engaged in the fight for its very existence against the claims of the Jicarilla Apache Nation and the United States' Department of Interior, Minerals Management Service ("MMS").

---

[18] See transcript of June 19, 2006 hearing, page 88, lines 4-6.
[19] Transcript of June 19, 2006 hearing, page 88, lines 4-6.
[20] While the Response is a Response brief, it is also the opening brief of a cross-appeal, and this deals with the issue raised on cross-appeal.
[21] Response at page 47.

Between the conditional confirmation approval in May of 2004 and the final confirmation hearing in October 2004, Golden Oil expended all its energy on that Herculean enterprise. Negotiating lien documents with Energen would be absurd if the debtor would never survive confirmation.

The Court below was, perhaps understandably, powerfully impressed by the seriousness of the claims against Golden Oil for millions of dollars of additional royalties. The Jicarilla Nation through its fiduciary the MMS filed a claim for $3,766,000. The MMS also claimed interest and penalties were running. For Golden Oil, whose assets were only $2 million at the time, even a fractional settlement of such huge claims would have been fatal. The Jicarilla Nation (though the MMS claim) hoped to break Golden Oil and seize its leases on Jicarilla reservation lands without having to explain the merits of the claim.

Energen was represented by one of the largest firms in Texas -- Locke Liddell. Energen's litigation and transactional resources were not as burdened as Golden Oil's.

Perhaps understandably, at the conditional confirmation hearing in May 2004, the Court openly questioned whether Golden Oil could defeat the Jicarilla and MMS claims.

In the short time after the May 2004 conditional confirmation hearing and the October 6, 2004 confirmation hearing, Golden Oil obtained over 70,000 pages of documents from the MMS. Despite then being allowed only four weeks for depositions of US Government officials from the MMS, and despite having a total staff of only three persons, Golden Oil eventually penetrated the complex Jicarilla Apache royalty claims and exposed that the underlying methodology which drove them was entirely bogus.

Within days after a deposition of a senior MMS official, the following occurred: (1.) The Jicarilla Nation/MMS claim for $3,760,000 for back royalties, was withdrawn, with prejudice;[22] (2.) The MMS claim for $726,157.98 of fines and penalties for alleged non-payment of royalties was withdrawn, with prejudice[23]; and (3.) In response to Golden Oil's demand for payment of its legal fees under the Equal Assets to Justice Act the Department of Justice voluntarily paid pay $75,000 to Golden Oil.[24]

The struggle with the Jicarilla Nation and MMS involved the very life of Golden Oil. With its modest asset size, Golden Oil could not afford any compromise or settlement. Golden Oil had to win outright or be extinguished.

Thus, when Energen delivered its initial 500 page "mortgage package"[25], embedded with "triggers" enabling Energen to take over Golden Oil's lease and operations for non-monetary "defaults" (found, among other places, embedded in Energen's escrow agreement which in every detail was "satisfactory to Energen"), Golden Oil had no time, resources or reasonable business priority to respond to the draft "mortgage".  Golden Oil had to be preoccupied with the massive MMS/Jicarilla Nation claims because, unless they were won outright, Golden Oil would be extinguished.

Mr. McElvenny presented unrebutted testimony that Energen knew Golden Oil was busy with the fight of its life and unable to review the "mortgage package", that it was completely unacceptable, and that it would be addressed only after the MMS claims were resolved.[26]

Further, Energen did not attempt to controvert McElvenny's testimony that he had never met Terry Radney, Energen's witness (and an oil and gas lawyer partner from Energen's

---

[22] Docket #397.
[23] Id.
[24] Id.
[25] The Mortgage package originally submitted is attached to the Motion to Enforce, Record #2..

Counsel's law firm), or Stan Pieringer (another partner from the same firm), until after Thanksgiving 2005 is uncontroverted.

The Memorandum Opinion of the court below gave considerable weight to the lapse of time after the massive original "mortgage package" with its triggers was delivered, and the time Golden Oil actually responded to the package. The Court below did not hear the US government and Jicarilla disputes, but only saw the results. While the Court below knew the parties did not reach an agreement, and the unrebutted testimony was that Golden Oil was too busy to review the massive draft submitted by Energen, Energen claims entitlement to the original draft of the Escrow Agreement.

Energen claims that Golden Oil agreed to their form mortgage, but that is not what the Court below actually found. Instead, the court found that a *kind* of real estate mortgage (that had none of Energen's embedded triggers) was part of the agreement. The Court did not find that Energen's actual draft mortgage was agreed to.

## Response to Energen's Motion to Dismiss

The Fifth Circuit has dealt with late bankruptcy briefs before. In *Zer-Ilan v. Frankford (In re CPDC Inc.)*, 221 F.3d 693, 701 (5th Cir. 2000), the Fifth Circuit dealt with an appellant who missed the deadline to designate issues and also missed the extended deadline to file the appellate brief by 30 days, and the appellant *did not* timely file a request for an extension. Judge Hughes dismissed the appeal, but the Fifth Circuit vacated and reversed, pointing out that the brief delays injured no one and that there was no evidence of bad behavior. The delays were unintentional and Counsel complied with all other deadlines.

---

[26] Transcript of May 17, 2006 Trial pp.21-22.

Here, counsel timely sought an extension in good faith and that extension is not opposed. Counsel complied with *all* other deadlines, such as the deadline to designate the record and issues. There is no doubt that Mr. McElvenny is critical to his company's defense and no doubt that he was sidelined by serious surgeries by doctors and at hospitals. Dismissal of the appeal under these circumstances would be contrary to the intent of the Rules. See Fed. R. Bankr. P. 1001 and 8001.

The purpose of Rule 8001(a), setting forth the discretion to dismiss an appeal, is to <u>punish misbehavior</u>, not to automatically dismiss appeals for which good cause is shown and upon unopposed motion for extension:

> [T]he district court incorrectly interpreted the rule to mean that a district court has discretion to decide not to dismiss an appeal when procedural rules have been breached, rather than discretion to decide whether dismissal is appropriate. The district court's <u>interpretation presupposes</u>, contrary to the plain language of Rule 8001(a), <u>that dismissal is the norm rather than a possible sanction warranted only in extreme cases.</u>

*CPDC* 221 F.3d at 699 (emphasis added)

As the Fifth Circuit noted in *CPDC* "In the absence of evidence of prejudice or obstinately dilatory conduct, and given that the purpose of Rule 8006 has been satisfied, we conclude that dismissal was not justified in this case." <u>Id</u> at 701.

Here, there is no dilatory or prejudicial delay. This Court's resources were engaged in a high-profile death penalty case and the delay only slowed down the arrival of the brief by one month. Energen overreaches in an attempt to gain a tactical litigation advantage in the face of a legitimate need for a brief delay. The interests of justice were not harmed, and there was no misbehavior by counsel.

## CONCLUSION

Energen's shotgun approach should backfire. The only relevant issues are whether the Court erred in admitting subsequent negotiations of counsel as parol evidence, which was Energen's entire case. The Bankruptcy Court erred as a matter of law in finding an ambiguity as to whether the parties intended a real estate lien. The Bankruptcy Court then erred in the manner it admitted the evidence. Lastly, the Bankruptcy Court missed a very important step by purporting to order Titan Wells to subordinate its lien. The Bankruptcy Court should never have considered an award of legal fees because a plan of reorganization is not a state law contract. Energen's other points are equally baseless.

These errors can be reversed and the issue dealt with efficiently if this Court reverses the Bankruptcy Court and remands for the proper application of the parol evidence rule, after notice to Titan Wells. In the absence of Energen's extraneous parol evidence, the Bankruptcy Court is left with a simple exercise of granting a lien on "production" and "proceeds" by a security agreement, as his own expert had recommended.

Dated: December 21, 2006

Respectfully submitted,
WEYCER, KAPLAN, PLUAKSI & ZUBER, P.C.


/s/ Hugh M. Ray, III
_____
Hugh M. Ray, III
SBN 24004246
11 Greenway Plaza, Suite 1400
Houston TX 77046
(Telephone) 713-961-9045
(Facsimile) 713-961-5349

ATTORNEY FOR APPELLANT

# <u>CERTIFICATE OF SERVICE</u>

I certify that on December 22, 2006, I sent a copy of the Appellant's brief via first class U.S. mail to the counsel of record that are listed below.

Phil Eisenberg
Locke Liddell & Sapp
600 Travis, Suite 3400
Houston, Texas 77002

_____
MELISSA A. HASELDEN